IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

JOSE I. CALDERON                                              Petitioner


V.                              No.  13-2257

SHELIA SHARP, Director
Arkansas Dept. of Community Corrections, and
DALE OWEN, ADCC Probation Officer                    Respondents


MAGISTRATE JUDGE'S REPORT and RECOMMENDATION


Before the court is the Petitioner's Motion to Vacate, Set Aside, or Correct a Sentence

Pursuant to 28 U.S.C. Section 2254 (ECF No. 1) filed December 13, 2013.  The Respondents

filed a Response (ECF No. 10) on February 20, 2014. On March 28, 2014 the court entered an

order (ECF No. 11) appointing counsel and setting a hearing for August 19, 2014.  On July 23,

2014 the Respondents filed a Motion for Summary Judgment (ECF No. 24) which was denied on

August 4, 2014. (ECF No. 32).  A hearing was conducted on August 19, 2014 at which Petitioner

Jose I. Calderon and Rhonda McCauley, his retained attorney, testified.

## I.  Background

On April 12,2012, Petitioner pleaded guilty to second-degree sexual assault in Crawford

County Circuit Court. He was sentenced to a term of 72 months in the Arkansas Department of

Correction (ADC) and a suspended imposition of sentence of 96 months. (ECF No. 10-2).  It

appears that the Plaintiff's Transfer Eligibility (TE) date was December 20, 2012. (ECF No. 10-1,

p. 3).  Petitioner did not appeal his conviction or sentence and concedes in his petition that he

-1-

has not filed any post conviction petitions or any other pleadings in state court. (ECF No. 1, p. 3).

On May 17, 2012 the Department of Homeland Security filed an Immigration Detainer-Notice of Action against the Petitioner with the Washington County Jail where the Petitioner was housed at the time. (ECF No. 25-7). The Petitioner was ultimately transferred to the Arkansas Department of Corrections on June 19, 2012. (See Respondent's Exhibit 1).  The Petitioner's ADC records show that he was released to U.S. Immigration & Customs Enforcement on October 24, 2013. (Id.).  The Petitioner was in the custody and control of ICE at all time since his release from ADC and testified at the Habeas hearing by video conference.

The Plaintiff filed the current Motion under 28 U.S.C. § 2254 on December 2, 2013 claiming that his attorney was ineffective because she 1) failed to use exculpatory evidence, 2) waived jury trial, 3) failed to investigate, 4) failed to challenge the arrest, 5) failed to raise defense that there was no forensic evidence, and 6) failed to advise the Plaintiff about the consequences of deportation.

## II.  Discussion

### A.  Limitations:

The Antiterrorism and Effective Death Penalty Act (AEDPA), Pub.L. 104-132, 110 Stat. 1214 (1996), established a one year statute of limitations for federal habeas corpus petitions brought by state prisoners. The limitation period shall run from the latest of–

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

-2-

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence. 28 U.S.C. § 2244(d)(1).

Petitioner pleaded guilty to second-degree sexual assault on April 12, 2012, and judgment was entered April 26, 2012. Under Arkansas law when the Plaintiff entered a plea of guilty he waives his right to appeal. *See Redding v. State*, 293 Ark. 411, 738 S.W.2d 410 (1987); A.R.Cr.P. Rule 36.1. The Petitioner had 90 days from the date of entry of Judgment to bring his claims of ineffective assistance under Rule 37 (Ark. R. Crim. P. 37.2(c)). The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection 28 U.S.C.A. § 2244 but the Plaintiff admittedly did not file any Rule 37 claim, thus his judgment became final on April 26, 2012 and he had until April 26, 2013 to file a habeas motion under 2254. Since the Plaintiff did not file his claim until December 13, 2013 his claim is barred under (A) unless the Petitioner can take advantage of equitable tolling or the time can be extended because the factual predicate of the claim could not have been discovered until a later date.

**1. Equitable Tolling:**

The U.S. Supreme Court has established that "federal habeas review of [defaulted] claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750, 111

S.Ct. 2546, 115 L.Ed.2d 640 (1991); *Bousley v. United States*, 523 U.S. 614, 622, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998); *Turnage v. Fabian*, 606 F. 3d 933 C.A. 8 (Minn.) 2010.

A prisoner whose petition is belatedly filed may take advantage of equitable tolling where extraordinary circumstances beyond his control make it impossible for him to file a petition on time or when the action of the respondent lulled him into inaction. *Jihad v. Hvass*, 267 F.3d 803, 805 (8thCir. 2001). In general, neither a plaintiff's unfamiliarity with the legal process nor his lack of representation during the applicable filing period merits equitable tolling. *Turner v. Johnson*, 177F.3d 390, 392 (5th Cir. 1999). See *Cross-Bey v. Gammon*, 322 F.3d 1012, 1015-16 (8th Cir. 2003); *Kreutzer v. Bowersox,* 231 F.3d 460, 463 (8th Cir. 2000, cert. denied, 534 U.S. 863 (2001) (equitable tolling not warranted in case of unrepresented prisoner alleging lack of legal knowledge or legal resources).

The Petitioner alleged six grounds for his ineffective assistance of council claim as follows:

**Ground One**: Failure of counsel to "enter exculpatory evidence he had been made aware of and knew would have either been beneficial for acquittal or presumptively utilized for impeachment of the testimony of the police officers."  (ECF No. 1, p. 8)

**Ground Two**: Failure of counsel where he "waived the Petitioner's constitutional right to jury trial without petitioner's consent."  (ECF No. 1, p. 9)

**Ground Three**: Failure of counsel to "investigate and explore witness who allegedly their testimony would have proven unreliable for police investigation." (ECF No. 1, p. 11)

**Ground Four**: Failure to "challenge Petitioner's arrest being illegal where the police failed to read the Miranda warnings att the time of arrest." (ECF No. 1, p. 13).

**Ground Five:** Failure to "make any inquiry or forensic determination if whether the testimonies and alleged offense by the police was ever used in violation of the 6th Amendment." (ECF No. 1, p. 14).

Petitioner's claims 1-5 would not constitute extraordinary grounds for equitable tolling because the Petitioner was aware of the factual basis of each of those ground at the time he entered his plea. Thus, Petitioner's Claims 1-5 began to run from the time of his plea and are barred by the limitations period.

**B.  Ineffective Assistance of Counsel:**

In **Ground Six** of his Petition the Petitioner contends that his attorney was Ineffective because she "failed to inform him about the consecunces (sic) of deportation by entering a no contest plea.[1]" (ECF No. 1, p. 15). The Petitioner states that the Petitioner "relied on his attorney advice in making the plea bargain, because counsel did not informed him that his would be deported for the criminal convictions." Id.

The Petitioner cited Padilla v. Kentucky in support for his contention. On March 31, 2010 the Supreme Court held in *Padilla v. Kentucky*, 559 U.S.356,(2010) that when advising a criminal defendant about the consequences of pleading guilty, "counsel must inform her client whether his plea carries a risk of deportation," and that failure to do so is subject to analysis under *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).  The Court also recognized that "preserving the client's right to remain in the United States may be more important to the client than any potential jail sentence." ( Id. at 368).

---

[1]The Petitioner actually entered a Guilty plea and the transcript of the plea proceeding has been filed. (ECF No. 19-1).

The United States Supreme Court reasoned that:

> changes to our immigration law have dramatically raised the stakes of a
> noncitizen's criminal conviction. The importance of accurate legal advice for
> noncitizens accused of crimes has never been more important. These changes
> confirm our view that, as a matter of federal law, deportation is an integral
> part—indeed, sometimes the most important part—of the penalty that may be
> imposed on noncitizen defendants who plead guilty to specified crimes.  559 U.S.
> at 364 (footnote omitted).

The Sixth Amendment of the Constitution of the United States affords a criminal

defendant with the right to assistance of counsel. *U.S. Const. amend. VI.* The Supreme Court

"has recognized that 'the right to counsel is the right to effective assistance of counsel.' "

*Strickland v. Washington*, 466 U.S. 668, 698, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) (citing

*McMann v. Richardson*, 397 U.S. 759, 771, n. 14, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970)).

A defendant "faces a heavy burden" to establish ineffective assistance of counsel

pursuant to § 2255.  *DeRoo v. United States*, 223 F.3d 919, 925 (8th Cir. 2000);  2254. *Cox v.

Wyrick,* 642 F.2d 222, 226 (C.A.Mo., 1981) To establish a claim of ineffective assistance of

counsel, the Defendant must satisfy the two-part test set forth in *Strickland v. Washington,* 466

U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

First, under the "deficient performance" component, he must show that his counsel "made

errors so serious that counsel was not functioning as the 'counsel' guaranteed [him] by the Sixth

Amendment." *Strickland*, 466 U.S. at 687. That showing can be made by demonstrating that

counsel's performance "fell below an objective standard of reasonableness." *Wiggins v. Smith*,

539 U.S. 510, 522, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003)(internal citations omitted.

Second, under the "prejudice" component, he must demonstrate that "there is a

reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. see also, i.e. *United States v  Ledezma-Rodriguez*, 423 F.3d 830, 836 (8th Cir. 2005)(post-conviction relief will not be granted on a claim of ineffective assistance of trial counsel unless the petitioner can show not only that counsel's performance was deficient but also that such deficient performance prejudiced his defense).

To satisfy this "prejudice" prong, Defendant must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different . . . a reasonable probability [meaning] a probability sufficient to undermine confidence in the outcome." *U.S. v. Rice*, 449 F.3d 887 at 897 (internal quotations omitted). Thus, it is not sufficient for a defendant to show that the error had some "conceivable effect" on the result of the proceeding because not every error that influences a proceeding undermines the reliability of the outcome of the proceeding. *Morales v. Ault*, 476 F.3d 545 (8th Cir.2007) (citing *Odem v. Hopkins*, 382 F.3d 846, 851 (8th Cir.2004)). Additionally, actual prejudice does not exist where a petitioner, at best, suffers the mere possibility of prejudice. *See Wainwright v. Torna*, 455 U.S. 586, 587-88 (1982); *Prewitt v. United States*, 83 F.3d 812, 819 (7th Cir.1996) (mere possibility does not equal actual prejudice). Although the two prongs of the "ineffective assistance" analysis are described as sequential, courts "do not . . . need to address the performance prong if petitioner does not affirmatively prove prejudice." *Boysiewick v. Schriro*, 179 F.3d 616, 620 (8th Cir.1999).

Also, to the extent that Petitioner's claims arise out the plea process, he must show a reasonable probability that, but for counsel's errors, he would not have pled guilty and would have insisted on going to trial. See *Strickland*, 466 U.S. at 688; *United States v. Prior*, 107 F.3d

654, 661 (8th Cir. 1997).

Rhonda McCauley is an experienced immigration attorney.  She worked for the Immigration Office from 2000 to 2003 and has been in private practice since 2003 specializing in Immigration Law.  She testified that shortly after she was retained she did contact ICE in an attempt to obtain bond but was advised that Mr. Calderon was not bondable.  She became aware of a deportation order that was entered in 1999 and he was also convicted of Identity Theft in 2005.  The Identity Theft would have been classified as a crime of moral turpitude and also required deportation.  In addition she testified that any conviction on the current charge that had "sex" in it would require deportation. Ms. McCauley testified that she personally met with the Petitioner four times and spoke with him on the phone at least twice.  She was adamant in her testimony that the immigration consequences were discussed throughly with the Petitioner at each meeting and prior to his plea.

Mr. Calderon testified that he meet with Ms. McCauley only three times and never spoke with her on the phone.  He denies that the immigration consequences of his plea were ever discussed with him and that he never would have pleaded guilty had he know he was going to be deported.  The issue is obviously one of credibility.

When the Petitioner was booked into the Crawford County Detention Center on August 24, 2011 on the charge of Sexual Assault 2nd Degree the Booking Report shows that an ICE Hold was placed on him for an Immigration Detainer. (ECF No. 25-1).  On August 25, 2011 Petitioner made a Request to the Crawford County Detention Center which stated that "I wish to have a contact visit with my family before I am deported, I don't know when that will be." (ECF 25-5; Respondents' Exhibit 3).  The Petitioner denied "writing" the request and claims that someone

-8-

wrote it for him.  Regardless it shows his knowledge of the immigration detainer and his concern over being deported.  When the Petitioner met with Ms. McCauley for their initial meeting he admits that she identified herself as an immigration attorney but still denied that they spoke about the immigration consequences of a conviction on the charge of Sexual Assault.

Ms. McCauley testified that shortly after being retained to represent the Petitioner she obtained an FBI rap sheet which showed the Petitioner was an illegal alien who had two Alien Registration numbers and two birth dates.  It also disclosed that he had been convicted in 2005 for Felony Fraud.  She testified that this is a crime of moral turpitude under the Immigration Laws and carries a mandatory deportation. (See 8 U.S.C.A. § 1182).   In addition the Petitioner had an warrant for deportation which was entered June 9, 1999. (ECF No. 25-4).

The State, shortly before the Petitioner's trial, amended the information from a charge of Sexual Assault 2nd Degree to a charge of Rape. Ms. McCauley testified that she negotiated with the State in an attempt to bargain the Sexual Assault charge down to something that did not have the descriptive term of "sexual assault" in it but the State would not agree. The Petitioner faced with a charge which carried a substantial greater penalty decided to enter a Plea of Guilty to the charge of Sexual Assault knowing that such a plea would result in his deportation.

It certainly would have been better if the immigration consequences warning were given at the time the Petitioner entered his plea before the Circuit Court of Crawford county or if Ms. McCauley had put something on the record at the time of plea but neither occurred. Based upon all of the evidence, however, it is clear that Ms. McCauley did discuss the immigration consequences with the Petitioner.  The court, faced with determining the credibility of the witness,  concludes that the evidence is overwhelming that Ms. McCauley did discuss the

immigration consequence with the Petitioner.

Even, however, if Ms. McCauley had never discussed the immigration consequences with the Petitioner it would make no difference in this particular case. To satisfy the "prejudice" prong of Strickland, Petitioner must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different . . . a reasonable probability [meaning] a probability sufficient to undermine confidence in the outcome." *U.S. v. Rice*, 449 F.3d 887 at 897.

The Petitioner was ordered deported in 1999. There is no copy of the order in the record but a warrant for the Petitioner's removal was signed June 9, 1999. (ECF No. 25-4). Ms. McCauley testified that the warrant for removal is not issued until after the order of removal. The warrant authorized the Attorney General to take the Petitioner into custody and deport him. Ms. McCauley testified that there is no administrative proceeding available to the Petitioner after the Warrant of Removal is issued.

The Petitioner admitted that he was being deported based upon the 1999 order of removal and that neither the 2005 conviction for Felony Fraud nor the 2011 conviction for Sexual Assault was the basis for his deportation. The end result is that the Petitioner would have been deported even if he had gone to trial on the Sexual Assault charge and been found not guilty.

The court believes that Ms. McCauley fully advised the Petitioner concerning the deportation consequences of his plea but, regardless, the Petitioner suffered no prejudice as a result of the plea.

### III.  Conclusion

Based upon the forgoing I recommend that the instant motion, filed under 28 U.S.C.

§2254 be **DISMISSED with PREJUDICE**.

The parties have fourteen days from receipt of this report and recommendation in which to file written objections pursuant to 28 U.S.C. Section 636(b)(1).  The failure to file timely written objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.


DATED  August 21, 2014.




/s/ J. Marschewski
HONORABLE JAMES R. MARSCHEWSKI
CHIEF UNITED STATES MAGISTRATE JUDGE